UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BERNARDO MARTINAJ, STEVE ARMENTO, PHILLIP
COPELAND, ANTHONY MACK, SCOTT ROSS, and
CHARLES W. TOLAND, JR.,                                         9:18-cv-257 (BKS/DJS)

                                      Plaintiffs,

v.

DONALD UHLER and JOSEPH BELLNIER,

                                      Defendants.
_____

**Appearances:**

*For Plaintiffs:*
Alan D. Levine
Office of Alan D. Levine
118-21 Queens Boulevard, Suite 504
Forest Hills, NY 11375

*For Defendants:*
Letitia A. James
Attorney General of the State of New York
Kostas D. Leris
Assistant Attorney General, of Counsel
David C. White
Assistant Attorney General, of Counsel
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      This action arises from alleged constitutional violations that occurred at Clinton Correctional Facility ("Clinton") and Upstate Correctional Facility ("Upstate") in the aftermath of David Sweat and Richard Matt's escape from Clinton in June 2015. The case is set for trial on

December 4, 2023, on: (1) the Fourteenth Amendment procedural due process claims of Plaintiffs Martinaj, Armento, Copeland, Mack, and Ross against Defendants Uhler and Bellnier; and (2) Plaintiff Toland's First Amendment free exercise of religion claim against Defendant Uhler.

Presently before the Court are the parties' motions in limine. (Dkt. Nos. 177, 181). Plaintiffs move to (1) preclude evidence of their criminal records; and (2) establish permission to request specific amounts in damages. (Dkt. No. 181). Defendants move to (1) dismiss Plaintiffs Martinaj, Armento, Copeland, Mack, and Ross' Fourteenth Amendment due process claims on the basis of qualified immunity; (2) admit into evidence Plaintiffs' felony convictions; (3) preclude evidence regarding claims previously dismissed in this case; (4) preclude evidence regarding Defendants' disciplinary histories, personnel files, or other lawsuits; (5) preclude evidence regarding the potential indemnification of any Defendant; and (6) preclude Plaintiffs from requesting specific amounts in damages. (Dkt. No. 177). The Court heard oral argument on the parties' motions at the final pretrial conference on November 20, 2023. For the following reasons, the parties' motions are granted in part and denied in part.

## II. DISCUSSION

### A. Plaintiffs' Motion in Limine

#### 1. Plaintiffs' Criminal Records

Plaintiffs move to preclude evidence of their criminal records, contending that because this case "does not concern a violent incident or a disciplinary proceeding[,] . . . there should be no mention to the jury whatsoever of the reasons any of them were incarcerated." (Dkt. No. 181, at 1–2). Defendants correspondingly move to admit into evidence Plaintiffs' felony convictions. (Dkt. No. 177, at 7–11). Citing Rule 609 of the Federal Rules of Evidence, Defendants argue that since the resolution of Plaintiffs' claims will "turn in large part on the jury's assessment of the

2

parties' credibility," "it is *entirely* appropriate that Defendants be permitted to inquire into *all* of Plaintiffs' convictions." (*Id.* at 11) (emphasis in original).

  Although Plaintiffs' motion in limine does not specify each Plaintiff's convictions, Defendants' motion in limine indicates that Plaintiff Martinaj was convicted in 2002 of murder in the second degree and assault in the first degree and sentenced to a term of 37 years and 6 months to life; Plaintiff Armento was convicted in 2008 of murder in the first degree and sentenced to life in prison without the possibility of parole; Plaintiff Copeland was convicted in 1989 of murder in the second degree and criminal possession of a weapon in the second degree and sentenced to a term of 25 years to life; Plaintiff Mack was convicted in 2008 of attempted robbery in the second degree, subsections two and three, and sentenced to a term of 14 years to life (Plaintiff Mack was released to parole on June 24, 2021); Plaintiff Ross was convicted in 2000 of murder in the second degree, criminal possession of a weapon in the second and third degree, intimidating a victim/witness in the third degree, and assault in the second degree and sentenced to a term of 51 years and 6 months to life; and Plaintiff Toland was convicted in 1996 of two counts of murder in the second degree, kidnapping in the first degree, assault in the first degree, and unlawful imprisonment in the first degree and sentenced to a term of 55 years to life. (*See id.* at 7–8).

  Rule 609(a)(1) provides that, in a civil case, "subject to Rule 403," evidence of a prior criminal conviction "must be admitted" to impeach a witness where the conviction was "for a crime that . . . was punishable . . . by imprisonment for more than one year." Fed. R. Evid. 609(a)(1)(A). "The Rule requires district courts to admit the name of a conviction, its date, and the sentence imposed unless the district court determines that the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *United States v. Estrada*, 430 F.3d 606, 620–21 (2d Cir. 2005) (quoting Fed. R. Evid. 403). Rule 609(a)(2) provides that, "for any crime regardless of the punishment," evidence of a criminal conviction "must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2). Unlike Rule 609(a)(1), Rule 609(a)(2) does not require a balancing under Rule 403: "evidence of conviction of a certain type of crime[,] one involving dishonesty o[r] false statement[,] must be admitted, with the trial court having no discretion." *United States v. Bumagin*, 136 F. Supp. 3d 361, 375 (E.D.N.Y. 2015) (first and third alterations in original) (quoting *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977)).

The applicability of Rule 609(a) is, however, limited by Rule 609(b), which provides that "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," then "[e]vidence of the conviction is admissible only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

As an initial matter, Plaintiffs Martinaj, Armento, Copeland, Ross, and Toland have not yet been released from confinement, while Plaintiff Mack was only released to parole on June 24, 2021. (*See* Dkt. No. 177, at 7–8). Accordingly, Rule 609(a), rather than Rule 609(b), applies. *See* Fed R. Evid. 609. Furthermore, none of Plaintiffs' convictions required admitting a dishonest act or false statement. *See Estrada*, 430 F.3d at 614. Therefore, Rule 609(a)(1) is applicable, not Rule 609(a)(2). *See* Fed. R. Evid. 609. Thus, the Court must balance the probative value of introducing evidence of each conviction against its prejudicial effect under Rule 403. *See*

4

*Brandon v. Kinter*, No. 13-cv-939, 2021 WL 3032693, at *2, 2021 U.S. Dist. LEXIS 133484, at *4 (N.D.N.Y. July 19, 2021); *see also Estrada*, 430 F.3d at 615–16.

      The Court recognizes that convictions for crimes of violence and weapons possession bear only "marginally on [propensity for] honesty or veracity." *Estrada*, 430 F.3d at 618. And the Court has considered the fact that Plaintiffs' convictions—the most recent of which occurred approximately fifteen years ago—are relatively remote in time and are therefore of lesser probative value than would be more recent convictions. *See Twitty v. Ashcroft*, No. 04-cv-410, 2010 WL 1677757, at *2, 2010 U.S. Dist. LEXIS 40499, at *6 (D. Conn. Apr. 23, 2010) ("[T]he 'probative value of a conviction decreases as its age increases.'" (quoting 4 Weinstein's Federal Evidence § 609.05(3)(d) at 609–41 (2d ed. 2010))). In this case, however, the jury will be required to assess Plaintiffs' credibility against that of Defendants to resolve factual disputes on the due process claims, such as disputes concerning the conditions of Plaintiffs' confinements and whether the confinements presented an atypical and significant hardship. Similarly, the jury will have to consider the credibility of Plaintiff Toland against the credibility of Defendant Uhler to decide Toland's free exercise of religion claim. Plaintiffs' character for veracity is therefore a central issue in this case, and the existence of prior felony convictions has some probative value of Plaintiffs' credibility. *See Estrada*, 430 F.3d at 617 ("Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully."); *Crenshaw v. Herbert*, 409 F. App'x 428, 431–32 (2d Cir. 2011) (summary order) (finding no abuse of discretion in admitting evidence of a prior conviction in a § 1983 case because "[e]vidence of [the plaintiff's prior conviction] was probative of his veracity, a central issue in this case because the jury was required to choose between two contradictory versions of the underlying incident" (internal citation omitted)). Moreover, the jury will know by the nature of Plaintiffs' claims that

5

Plaintiffs were convicted of crimes and serving prison sentences, which limits prejudicial effect. *See Espinosa v. McCabe*, No. 10-cv-497, 2014 WL 988832, at *6, 2014 U.S. Dist. LEXIS 31741, at *16 (N.D.N.Y. Mar. 12, 2014). Therefore, the Court finds that the probative value of the fact of Plaintiffs' felony convictions is not substantially outweighed by unfair prejudice or the other evils Rule 403 seeks to avoid.

However, the Court also finds that introducing the names of these convictions for crimes of violence and weapons possession poses a risk of an inflammatory impact on the jury and resulting unfair prejudice. *See Thomas v. Leifeld*, No. 12-cv-321, 2018 WL 3387690, at *3, 2018 U.S. Dist. LEXIS 116008, at *7 (N.D.N.Y. July 12, 2018) (finding that introducing evidence of crimes of violence may "inflame[ ] the jurors' prejudice against" a plaintiff as a result of an "emotional response to . . . event[s] otherwise factually unconnected to [the plaintiff's] testimony or the facts of the case eclipsing whatever veracity [the plaintiff] may otherwise have had in their eyes" (quoting *United States v. Devery*, 935 F. Supp. 393, 408 (S.D.N.Y. 1996))). Moreover, "the factor[ ] of . . . cumulative evidence militate[s] against admitting evidence of each of Plaintiff's felony convictions." *Espinosa*, 2014 WL 988832, at *6, 2014 U.S. Dist. LEXIS 31741, at *16.

Thus, after weighing all of the factors under Rule 403, the Court concludes that evidence of Plaintiffs' felony convictions is admissible to impeach Plaintiffs but that Defendants may only inquire into the dates of the convictions and the sentences imposed and, to the extent there were multiple felony convictions, may only refer to "felony convictions"; Defendants may not inquire into the names or nature of the crimes or the number of convictions. *See United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) ("In the Second Circuit, it is within the discretion of the district courts to further limit the evidence of the prior conviction to exclude the nature or

6

statutory name of the offense."); *Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993) ("[W]hile the fact that Mr. Lewis is a convicted felon serving a sentence of eleven years to life may be elicited, the charge on which he was convicted may not.").

2. **Specific Amounts in Damages**

Plaintiffs move to establish permission to request specific amounts in damages, noting that the Second Circuit in *Lightfoot v. Union Carbide Corp.* "declined 'to adopt a per se rule prohibiting counsel from suggesting a specific sum as damages.'" (Dkt. No. 181, at 3) (quoting 110 F.3d 898, 912 (2d Cir. 1997)). Defendants correspondingly move to preclude Plaintiffs from requesting specific amounts in damages. (Dkt. No. 177, at 14).

In the Second Circuit, the decision of whether to permit an attorney to argue for specific amounts in damages "is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." *Lightfoot*, 110 F.3d at 912. However, as Defendants correctly point out, "specifying target amounts for the jury to award is disfavored." (Dkt. No. 186, at 2) (quoting *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995)). Target amounts "anchor the jurors' expectations of a fair award at the place set by counsel, rather than by the evidence." *Ferreira v. City of Binghamton*, No. 13-cv-107, 2016 WL 4991600, at *5, 2016 U.S. Dist. LEXIS 126011, at *14 (N.D.N.Y. Sept. 16, 2016) (quoting *Consorti*, 72 F.3d at 1016).

As a preliminary matter, Plaintiffs have not identified what compensable damages they will be seeking. The Prison Litigation Reform Act ("PLRA") provides, in relevant part, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The PLRA's limitation on recovery "is generally interpreted to preclude a prisoner complaining of mental and emotional injury during

7

imprisonment, without a showing of physical injury, from receiving an award of compensatory damages." *Walker v. Schult*, 45 F.4th 598, 612 (2d Cir. 2022).

A plaintiff must prove more than a violation of their constitutional rights to recover compensatory damages in a § 1983 action; they must also demonstrate that the constitutional deprivation caused them an actual injury. *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir. 1993). "Absent a showing of causation and actual injury, a plaintiff is entitled to only nominal damages." *Id.* As a result, a finding that Plaintiffs have been deprived of a constitutional right does not automatically entitle them to a substantial award of damages. *See Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004).

If a plaintiff was deprived of liberty or property without constitutionally adequate due process but the deprivation would have taken place even if adequate process had been provided, the plaintiff is not entitled to recover damages as compensation for injuries caused by the deprivation because the failure to provide adequate process cannot properly be viewed as the cause of the deprivation. *See Carey v. Piphus*, 435 U.S. 247, 260 (1978). Consequently, if Plaintiffs would have been transferred to the Special Housing Unit ("SHU") at Upstate even had they been provided all process allegedly due—as Plaintiffs' attorney appeared to have conceded at the final pretrial conference—compensatory damages cannot be awarded for the transfers that allegedly occurred without adequate process.

Therefore, this portion of Plaintiffs' motion seems premature and the Court reserves ruling on it until trial.

    **B.**    **Defendants' Motion in Limine**

        **1.**    **Qualified Immunity**

Defendants move to dismiss Plaintiffs Martinaj, Armento, Mack, Copeland, and Ross' Fourteenth Amendment due process claims on the basis that Defendants are entitled to qualified

immunity with respect to such claims because "the process due to Plaintiffs was not clearly established and, as such, no reasonable person in Defendants' position would have known that their conduct was unlawful." (Dkt. No. 177, at 5). At the final pretrial conference, Plaintiffs opposed Defendants' argument, citing *Soto v. Walker*, 44 F.3d 169 (2d Cir. 1995).

As an initial matter, the Court notes that this appears to be a motion to reconsider the Court's ruling on summary judgment, and that it is untimely, N.D.N.Y. Local Rule 60.1 (requiring motions for reconsideration to be filed within fourteen days), and fails to meet the standard for reconsideration, *see United States v. Zhu*, 41 F. Supp. 3d 341, 342 (S.D.N.Y. 2014) (citing as bases for reconsideration an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error of law or prevent manifest injustice); *see also American Home Assur. Co. v. Merck & Col, Inc.*, 462 F. Supp. 2d 435, 444 (S.D.N.Y. 2006) (declining to address a motion in limine that "is in large part a disguised motion for summary judgment, or a motion for reconsideration").[1] While the Court declines, for these reasons, to reconsider its ruling on summary judgment, the Court addresses the issue of qualified immunity here to provide guidance to the parties.

Public officials are entitled to qualified immunity on a § 1983 claim "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (internal quotation marks omitted) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018));

---

[1] In their earlier motion for summary judgment, Defendants argued that "no reasonable officer in Defendant Uhler or Bellnier's position would believe that temporarily housing Plaintiffs in SHU while DOCCS and the New York State Police investigated an escape that Plaintiffs may have had information concerning implicated their protected liberty interest." (Dkt. No. 117-33, at 35–36). While Plaintiffs Martinaj, Armento, Copeland, Mack, and Ross were confined in SHU for relatively short periods of time, Defendants' argument did not address how they are entitled to qualified immunity given the factual disputes concerning the conditions of Plaintiffs' confinements and whether the confinements presented an atypical and significant hardship. Nor did Defendants' argument address the process that was due. Accordingly, the Court denied Defendants motion as to the due process claims. *Martinaj v. Uhler*, No. 18-cv-257S, 2023 WL 2984449, at *20, 2023 U.S. Dist. LEXIS 68167, at *67–68 (N.D.N.Y. Mar. 13, 2023).

9

*see also generally Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense on which defendants bear the burden of proof. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013).

Qualified immunity is inappropriate when there are material factual disputes as to a defendant's conduct. *See Franco v. Gunsalus*, 972 F.3d 170, 174 (2d Cir. 2020) (noting that, where there "remains a genuine factual dispute, the existence of qualified immunity cannot be determined until the factual dispute is resolved"). "If there are unresolved factual issues which prevent an early disposition of the defense [of qualified immunity], the jury should decide these issues on special interrogatories." *Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020).

Here, the five due process claimants challenge the lack of process in their transfers to SHU at Upstate. The record does not appear to be fully developed on the circumstances or timing of these transfers—six to nine days after the escape—which are relevant factors in the due process analysis. *See*, *e.g.*, *Hewitt v. Helms*, 459 U.S. 460, 473 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). It does not appear that the record reflects the basis for the transfers to SHU. Defendant Bellnier, who had the authority to transfer inmates, testified that he did not recall why inmates—including Plaintiffs—were designated for being housed in SHU. (Dkt. No. 138-15, at 51). Bellnier testified that he gave verbal approval for a transfer because the investigators requested that "a group of inmates" be transferred for further investigation and "it was a reasonable request given that" the escapees had been in "close proximity" to and "lived among the inmates who were being interviewed." (*Id.* at 51–56). Bellnier said that "it was reasonable to want them removed from the facility for further investigation . . . in case they were involved in some way." (*Id.*; Dkt. No. 135, ¶ 7). The record also does not reflect the reason for the lengths of time Plaintiffs were held in SHU—which

10

ranged from fourteen days to thirty-two. *Cf. Proctor v. LeClair,* 846 F.3d 597, 609 (2d Cir. 2017) (noting that there is "a constitutional ceiling on" DOCCS officials' "substantial discretion in deciding whether to impose an Ad Seg term"; "[t]o ensure that a state prison facility does not use Ad Seg as a pretext to commit an inmate to the SHU indefinitely, the Due Process Clause of the Fourteenth Amendment mandates that prison officials periodically review whether an inmate continues to pose a threat to the facility.") (citing *Hewitt*, 459 U.S. at 477 n.9).

There are also factual questions regarding whether the conditions in SHU constituted an atypical and significant hardship which was substantially more grave that the hardship an inmate was likely to endure under typical SHU conditions or in general population. Finally, Plaintiffs dispute whether Defendants complied with the New York regulation governing "other admissions" to SHU, 7 N.Y.C.R.R. § 301.7, i.e., whether Plaintiffs had a meaningful "opportunity to be interviewed . . . concerning [their] placement in an SHU."

As the Court noted at the final pretrial conference, the parties can propose factual interrogatories for the jury, to assist the Court in resolving the issue of qualified immunity, and the Court will discuss these interrogatories at the jury instruction conference at the close of the evidence. *See Jones*, 963 F.3d at 225. Defendants have already submitted proposed interrogatories. (Dkt. No. 176-1).

Accordingly, Defendants' motion to dismiss based on qualified immunity is denied at this time.

### 2. Defendants' Remaining Arguments

In their motion in limine, Defendants also seek to preclude Plaintiffs from introducing evidence regarding claims previously dismissed in this case, (Dkt. No. 177, at 11–12); Defendants' disciplinary histories, personnel files, or other lawsuits, (*id.* at 12–13); and the potential indemnification of any Defendant, (*id.* at 13–14). Plaintiffs' attorney stated at the final

pretrial conference that he will not seek to admit any of this evidence. Accordingly, Defendants' motion on this evidence is denied as moot.

### III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion in limine, (Dkt. No. 181), and Defendants' motion in limine, (Dkt. No. 177), are **GRANTED in part** and **DENIED in part** as set forth above.

**IT IS SO ORDERED.**

Dated: November 27, 2023
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge